NOTICE
Decision filed 05/10/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240261-U

NO. 5-24-0261

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 24-CF-23 |
| | ) | |
| JOSEPH AUSTIN, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's order granting the State's petition to deny pretrial release is affirmed where the court did not abuse its discretion by finding that no less restrictive conditions would mitigate any threat posed by his release, and the court properly determined that defendant posed a real and present threat to any person or the community.

¶ 2    Defendant timely appeals the circuit court's order denying his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons we affirm the circuit court's order.

1

¶ 3                              I. BACKGROUND

¶ 4      On February 12, 2024, the State charged defendant by information with four counts of child pornography in violation of section 11-20.1(a)(6) of Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-20.1(a)(6) (West 2022)). The same day, the State filed a verified petition to deny defendant pretrial release.

¶ 5      On February 13, 2024, the circuit court held a detention hearing. The State called Officer Greg Just of the Taylorville Police Department. Officer Just testified that on February 6, 2024, defendant came to the lobby of the Taylorville Police Department and requested to speak to an officer. Officer Just testified that defendant wanted "advice" because "he thought that his daughter and her girlfriend were trying to set him up because that [*sic*] he had pictures, explicit pictures that were sent to his e-mail from her e-mail."

¶ 6      Approximately 30 minutes later, the "girls" and their parents arrived at the police station to report that explicit images of the girls were emailed to defendant without their knowledge. Officer Just testified that the girls were at defendant's house using defendant's tablet. A notification came through on the tablet regarding an email sent from defendant's daughter's email address to defendant's email. Defendant's daughter indicated that she had not sent her dad an email. The girls clicked the notification and found explicit photos of defendant's daughter's girlfriend attached to the email. Defendant had a passcode to his daughter's phone.

¶ 7      Defendant's daughter's girlfriend provided a Snapchat conversation she had with defendant to law enforcement wherein she told defendant that he was "creepy" and "horrible" and that she was "traumatized." Defendant responded: "I don't even know what to say to that. I am sorry. I know and I'm sorry for everything. Neither of you will have to worry about me anymore." Defendant continued: "I fucked up. Even if I was fucked up. Ain't nobody got to think I'm nothing but some sick fucking freak."

¶ 8 Officer Just interviewed defendant, and defendant confirmed that he sent the photos from his daughter's phone to his personal e-mail account. Officer Just testified that law enforcement received a search warrant and conducted a "tablet extraction" which revealed the photos of defendant's daughter and his daughter's girlfriend as well as approximately 49 additional images which were sent to the National Center for Missing and Exploited Children. The search history from the tablet included searches such as: "sleeping pills that can be dissolved in drinks," "how to mix pills and drinks," "make a potent drink to knock someone out," "daddy daughter," "videos backslash drugged daughter," "incest," "dark porn," "dark web porn links," "most perverse sites online," "videos backslash daughter plus force," "hardcore rape," "daddy daughter taboo hardcore," among others. Officer Just testified that there was a "personal video" of a "male penis walking towards a limp hand in bed," seemingly suggesting that defendant created the video himself.

¶ 9 Following arguments by the State and defense counsel, the circuit court ordered defendant detained. Regarding whether defendant posed a real and present threat to the safety of a person or the community, the court noted that although the offense did not involve "actual sexual contact," it "is a sex offense." The court noted that defendant did not have a criminal history, however, he had "some mental health history."

¶ 10 The court reasoned that "defendant does pose a threat of harm to the two minor children that are referenced." The court also considered the "nature and extent of the search history of the defendant." Specifically, the court noted that the evidence suggested that defendant searched about "drugging daughters, about incest, about forcible rape, hardcore rape, daddy daughter taboo and things of that nature, which are, make him a danger to those two children." The court also noted that defendant was a "danger to himself" because defendant "made more than one statement indicating suicidal ideation." The court took judicial notice of 24-MX-13 and 24-MX-15,

complaint for search warrants, affidavit, and search warrants, and where defendant's daughter said that she and defendant's girlfriend's 14-year-old sister woke up with their pants and underwear pulled down to their knees and the "vaginal region feeling irritated." For these reasons, the court reasoned that "defendant does pose a real and present threat to the safety of the two minor children at issue here, as well as himself."

¶ 11    Next, the court considered whether the State proved by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat presented. The court noted that although defendant's daughter was not living in his home at that time, "if she came to his residence, the monitoring and the no contact provision is probably not going to be very effective." The court also noted that electronic monitoring "would not protect the defendant from himself" given defendant had "significant mental health issues." Therefore, the court found that there was no condition or combination of conditions that could mitigate the real and present threat.

¶ 12    On February 13, 2024, the circuit court entered a detailed written order finding that (1) the proof was evident and presumption great that defendant committed a qualifying offense; (2) defendant posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons. The court specifically noted that "less restrictive conditions would not assure safety of any person or persons, or the community" because:

> "One of the alleged victims is the daughter of the defendant. Although not charged at this time, there is indication in the search warrant materials that she was potentially a victim of sexual assault. The Defendant made statements consistent with suicidal ideation. A no contact provision and electronic monitoring could potentially mitigate the court's concern re potential harm to his daughter but the Court understands the minor lived with the Defendant and Defendant could easily evade detection if the minor came to his residence. Electronic monitoring would not protect Defendant from himself. He has significant mental health issues

4

according to the pretrial services report that further concerns the court re whether Defendant is a danger to himself."

¶ 13 The circuit court's written detention order also noted additional reasoning for denial of pretrial release as follows:

"The alleged minor in the pictures is the underage friend of Defendant's daughter. Internet search history of the defendant's devices indicated searches related to 'daddy daughter' pornography, dark web pornography, drugging people, forcible rape and hardcore rape."

¶ 14 Defendant filed a timely notice of appeal utilizing a form similar to the Notice of Pretrial Fairness Act Appeal 604(h) (Defendant as Appellant) standardized form provided by the Illinois Supreme Court. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). Defendant's claims of error consist of three checked boxes with corresponding argument on the standardized notice of appeal form, asserting (1) "[t]he State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case"; (2) "[t]he State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight"; and (3) "[d]efendant was denied an opportunity for a fair hearing prior to the entry of the order denying or revoking pretrial release." Defendant also checked the "other" box, arguing that the "State improperly offered search history terms of a device associated with [defendant] as statements made by him. The Court erred in considering those same terms as evidence of his dangerousness."

¶ 15 The Office of the State Appellate Defender (OSAD) was appointed to represent defendant in this appeal and on April 8, 2024, filed a memorandum in support. On April 29, 2024, the State filed a responsive memorandum.

5

¶ 16                              II. ANALYSIS

¶ 17     On appeal, defendant argues that the State failed to prove by clear and convincing evidence that less restrictive conditions would fail to mitigate any threat posed by his release, and the court erred by finding that defendant being a danger to himself made him eligible for detention. For the reasons that follow, we disagree and affirm.

¶ 18     Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act), as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain situations, limited by statute. 725 ILCS 5/110-6.1 (West 2022). If pretrial release is granted, but with conditions, some of those conditions are mandatory, whereas others are permissive. *Id.* §§ 110-5(c), 110-10(a) (mandatory conditions); 110-10(b) (nonexclusive list of permissive conditions).

¶ 19     To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person;[1] (4) the nature and seriousness of the specific, real, and present threat

_____

[1]Defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

6

to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 20    Our standard of review of pretrial release determinations is twofold. The circuit court's factual findings will be reviewed under the manifest weight of the evidence standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). The circuit court's ultimate determination regarding the denial of pretrial release, however, is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 21    On appeal, defendant argues that the State failed to prove by clear and convincing evidence that less restrictive conditions would fail to mitigate any threat posed by his release, and the court erred by finding that defendant being a danger to himself made him eligible for detention. We consider each argument in turn.

¶ 22    First, defendant argues the State failed to prove by clear and convincing evidence that less restrictive conditions would fail to mitigate any threat posed by his release. We disagree, because the record belies defendant's assertion. As noted by the circuit court in its oral ruling, although

---

ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

defendant's daughter was not living in his home at that time, "if she came to his residence, the monitoring and the no contact provision is probably not going to be very effective." In the written order, the court further reasoned:

> "A no contact provision and electronic monitoring could potentially mitigate the court's concern re potential harm to his daughter but the Court understands the minor lived with the Defendant and Defendant could easily evade detection if the minor came to his residence. Electronic monitoring would not protect Defendant from himself. He has significant mental health issues according to the pretrial services report that further concerns the court re whether Defendant is a danger to himself."

We cannot say that the court's well-reasoned order, based on the testimony of Officer Just and the evidence before the court, was against the manifest weight of the evidence.

¶ 23   Second, defendant argues that the circuit court erred by finding that defendant being a danger to himself made him eligible for detention. We disagree. According to section 110-5(a)(3)(A) and (B) of the Code (725 ILCS 5/110-5(a)(3)(A), (B) (West 2022)), defendant's history and characteristics include: "the defendant's character, physical and *mental condition*, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings." (Emphasis added.) Nonetheless, we find defendant's reliance on this point misplaced and belied by the record.

¶ 24   Although the court expressed concern about defendant's mental health and suicidal ideations, the court largely noted that defendant was a threat to his own daughter. Defendant's search history included searches such as: "sleeping pills that can be dissolved in drinks," "how to mix pills and drinks," "make a potent drink to knock someone out," "daddy daughter," "videos backslash drugged daughter," "incest," "dark porn," "dark web porn links," "most perverse sites online," "videos backslash daughter plus force," "hardcore rape," "daddy daughter taboo hardcore," among others. Officer Just testified that there was a "personal video" of a "male penis

8

walking towards a limp hand in bed." The court expressly noted in its ruling that this search history posed a threat of harm to the two minor children involved, specifically defendant's daughter. Moreover, although not yet charged, the court considered law enforcement's concern that defendant may have sexually assaulted his daughter and defendant's girlfriend's sister, who spent the night at the home. Therefore, although the court expressed concern for defendant's suicidal ideations, the court correctly concluded that defendant posed a threat to his daughter and ordered defendant detained accordingly.

¶ 25    Finally, in a footnote, defendant contends that the circuit court "improperly took it upon itself to rely on the facts in the affidavit in case 24-MX-13." We disagree. A reviewing court may take judicial notice of records of proceedings in its own or other courts which contain easily verifiable, though not generally known, facts that "aid in the efficient disposition of litigation." *People v. Davis*, 65 Ill. 2d 157, 165 (1976). Moreover, "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 725 ILCS 5/110-6.1(f)(5) (West 2022). In the case before us, both the State and defense counsel acknowledged during the detention hearing that the investigation related to the alleged sexual assault was ongoing. As such, the court took judicial notice of 24-MX-13 and 24-MX-15, complaint for search warrants, affidavit, and search warrants, and where defendant's daughter said that she and defendant's girlfriend's 14-year-old sister woke up with their pants and underwear pulled down to their knees and the "vaginal region feeling irritated." This evidence is certainly relevant as to whether defendant posed a real and present threat to the safety of a person or the community—specifically, his own daughter.

¶ 26    We have thoroughly reviewed the record on appeal in this matter. The circuit court made an individualized finding to deny defendant pretrial release after considering the facts presented, the pretrial investigation report, arguments made by counsel, and all relevant circumstances,

including, but not limited to, the nature and seriousness of the violations or criminal acts alleged. The circuit court found that defendant committed a detainable offense, posed a real and present threat to the community, and that no conditions of pretrial release could mitigate the threat. Based on our review of the record, we find that the circuit court's factual findings were not against the manifest weight of the evidence and the circuit court's ultimate determination to deny defendant pretrial release was not an abuse of discretion.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated herein, the circuit court's findings were not against the manifest weight of the evidence and its ultimate disposition was not an abuse of discretion. Therefore, the Christian County circuit court's order of February 13, 2024, is affirmed.

¶ 29    Affirmed.